## UNITED STATES DISTRICT COURT
### for the
### SOUTHERN DISTRICT OF FLORIDA

April P. Fox
       Plaintiff,

vs.



FILED BY_____D.C.

MAY 28 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

FLORIDA DEPARTMENT OF CHILDREN
AND FAMILIES/CHILD PROTECTIVE TEAM,
DAVID OKON (DCF/CPT INVESTIGATOR).
JACKSON MEMORIAL HOSPITAL,
DR.MARIA BASTOS, DR.JOAN ALVARANGA,

       Defendants.

_____/

### **PLAINTIFFS' 42 U.S.C 1983, AND 1985 LAWSUIT.**

COMES NOW April P. Fox, Sui Juris, and files her common law lawsuit against the following Defendants and states as follows;

1.The Plaintiff brings a 42 U.S.C 1983, and 1985 Federal civil Rights lawsuit against the FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES/CHILD PROTECTIVE TEAM herein referred to as "the DEPARTMENT/CPT" and its employees DAVID OKON and ELIZABEH ANTHONY. A Common Law Tort, Fraud/Constructive Fraud, Medical malpractice/negligence, against JACKSON MEMORIAL HOSPITAL. A medical malpractice/negligence suit against Dr. Maria Bastos. A medical malpractice/negligence suit against Joan Alvaranga.

2. The Plaintiff April P. Fox moves this court to Grant her the relief sought in this civil complaint against the above mentioned Defendants for the violation of her federal and civil rights that had caused her four years of torment and sufferings. This court has the moral obligation to

1

render her justice for her sufferings and to recompense her for all her many injuries caused by the Defendants. No amount of money can make up for four years of torment from losing her children to have to be fighting a criminal bogus charge as an insult to injury. Under the common law, Justice means "repair", "making whole". This court should make her whole by compensating her for her injuries and help her to at least recover financial damages caused by the Defendants.

## JURISDICTION

3. Plaintiff invokes this court's jurisdiction under **28 U.S.C. §1331. Federal question. Venue is proper in that the action sued upon took place in Miami Dade County.**

## PROCEDURAL BACKGROUND.

4.        On the morning of May 30, 2015, the Plaintiff April Fox woke up hearing her then 10 month old baby daughter herein referred to as "S.J" making a moaning sound. The Plaintiff was frightened to see a swelling on her baby's right face. The Plaintiff rushed her baby to Jackson Memorial Hospital seeking help. She was questioned by Doctors and hospital staff as to what may have occurred. The Plaintiff explained to them that she simply don't know, and that she saw this swelling for the first time when she woke up, so she immediately rushed the baby to the hospital.

5. Shortly thereafter, the Plaintiff was been suspected of been a child abuser of her then 10 month old baby S.J. After finding more fractures, the Plaintiff was arrested by Miami Dade Police on June 1st, 2015. Within the next four years, the Plaintiff was able to get expert Doctors and Metabollic bone disease specialists to help her litigate her case. She was finally acquitted of the charge on May 16, 2019.

## THE FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES/CPT RAKETEERING ACTIVITIES THAT MOTIVATES THE AGENCY TO SIDE TRACK DUE PROCESS.

6. Children are being wrongfully and unlawfully kidnapped and alienated from everyone in their entire family by the department of children and family services without any evidence, without

probable cause, without a court order or a warrant. Each child that DCFS/CPS takes is worth money to the state. One child alone can bring in revenue of $1 million. DCF gets federal funding for each child they take and Bonus incentives for each child adopted out to strangers. They have a quota of children that they must adopt out each year to get bonus Incentives for each child. This has put a price tag on every child's head. Families cannot compete with the funding. DCF is not in the best interest of children but in the best interest of their selves. They are committing crimes against humanity and hurting children to keep money flowing in. Plaintiff moves this court to award her $44,000,000 for all the terror that she befell over the past 4 years by this Defendant, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.

## FEDERAL INCENTIVES TO THE STATES.

### TITLE IV-B OF THE SOCIAL SECURITY ACT.
### PAYMENT TO STATES
7. **Sec. 424. [42 U.S.C. 624] (a)** From the sums appropriated therefor and the allotment under this subpart, subject to the conditions set forth in this section, the Secretary shall from time to time **pay to each State** that has a plan developed in accordance with section 422 an amount equal to 75 per centum of the total sum expended under the plan (including the cost of administration of the plan) in meeting the costs of State, district, county, or other local child welfare services.
(b) The method of computing and **making payments** under this section shall be as follows:
(1) The Secretary shall, prior to the beginning of each period for which a payment is to be made, estimate the amount to be paid to the State for such period under the provisions of this section.
(2) From the allotment available therefor, the Secretary shall pay the amount so estimated, reduced or increased, as the case may be, by any sum (not previously adjusted under this section) by which he finds that his estimate of the amount to be paid the State for any prior period under this section was greater or less than the amount which should have been paid to the State for such prior period under this section.
**(c) Limitation on Use of Federal Funds for Child Care, Foster Care Maintenance Payments, or Adoption Assistance Payments.**—The total amount of **Federal payments** under this subpart for a fiscal year beginning after September 30, 2007, that may be used by a State for expenditures **for child care, foster care maintenance payments,** or **adoption assistance payments** shall not exceed the total amount of such payments for fiscal year 2005 that were so used by the State.

### TITLE IV-E OF THE SOCIAL SECURITY ACT.

3

**ADOPTION AND LEGAL GUARDIANSHIP INCENTIVE PAYMENTS.**
8. **Sec. 473A. [42 U.S.C. 673b] (a)** Grant Authority.—Subject to the availability of such amounts as may be provided in advance in appropriations Acts for this purpose, the Secretary shall make **a grant to each State that is an incentive-eligible State** for a fiscal year in **an amount equal to the adoption and legal guardianship incentive payment payable to the** State under this section for the fiscal year, which shall be payable in the immediately succeeding fiscal year...
(1) In general.—Except as provided in paragraph (2), **the adoption and legal guardianship incentive payment payable to a State** for a fiscal year under this section shall be equal to the sum of—

9. **(A) $5,000,** multiplied by the amount (if any) by which
(i) the number of foster child adoptions in the State during the fiscal year; exceeds
(ii) the product (rounded to the nearest whole number) of
(I) the base rate of foster child adoptions for the State for the fiscal year; and
(II) the number of children in foster care under the supervision of the State on the last day of the preceding fiscal year;
**(B) $7,500,** multiplied by the amount (if any) by which
(i) the number of pre-adolescent child adoptions and pre-adolescent foster child guardianships in the State during the fiscal year; exceeds
(ii) the product (rounded to the nearest whole number) of
(I) the base rate of pre- adolescent child adoptions and pre- adolescent foster child guardianships for the State for the fiscal year; and
(II) the number of children in foster care under the supervision of the State on the last day of the preceding fiscal year who have attained 9 years of age but not 14 years of age; and
**(C) $10,000,** multiplied by the amount (if any) by which
(i) the number of older child adoptions and older foster child guardianships in the State during the fiscal year; exceeds
(ii) the product (rounded to the nearest whole number) of
(I) the base rate of older child adoptions and older foster child guardianships for the State for the fiscal year; and
(II) the number of children in foster care under the supervision of the State on the last day of the preceding fiscal year who have attained 14 years of age; and
**(D) $4,000,** multiplied by the amount (if any) by which
(i) the number of foster child guardianships in the State during the fiscal year; exceeds
(ii) the product (rounded to the nearest whole number) of
(I) the base rate of foster child guardianships for the State for the fiscal year; and
(II) the number of children in foster care under the supervision of the State on the last day of the preceding fiscal year....

**COUNT 1 CIVIL AND CRIMINAL CONSPIRACY RIGHTS AGAINST THE FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES/CPT.**

10. The FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES/CPT had violated the Plaintiffs fifth and fourteenth amendment rights. In the year 2015, the DEPARTMENT/CPS filed a Termination of Parental Rights Termination against the Plaintiff to terminate her parental rights.  The petition that was filed against the Plaintiff were filled with lies, not errors, because the Plaintiff addressed these supposedly errors, but the DEAPRTMENT/CPT proceeded with the false information that was used to help terminate Plaintiff's parental rights. This was done due to federal incentive funding under Title IV-E of the social security act. There was several contract involving several agencies.  All this proof will be provided later on in this litigation if needs be. Plaintiff moves this court to award her $4,000,000 for all the terror that she befell over the past 4 years by this Defendant in this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.


### COUNT 2 FOURTEENTH AMENDMENT DUE PROCESS VIOLATION AGAINST THE FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES/CPT.

11. The DEPARTMENT/CPS failed to safeguard the due process rights of Plaintiff under the fourteenth amendment, that stated that no one should be deprived of life, liberty and the pursuit of happiness without due process of law.  The DEPARTMENT/CPS falsified documents which showed disfavor against the Plaintiff to help prejudiced her in losing her parental rights. Plaintiff moves this court to award her $3,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.


### COUNT 3 FOURTH AMENDMENT VIOLATION AGAINST THE FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES/CPT.

12. Plaintiff's daughter, then 5 year old J.K  was removed from her home without a "warrant" signed by a judge. The Fourth Amendment to the United States Constitution clearly states; *'The*

*right of the people to be secured in their persons , houses, papers and effects against unreasonable searches and seizures, cannot be violated, and no warrants shall issue, but upon probable cause supported by  oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized'.*

The then 5 year old offspring of Plaintiff was in good health, and well cared for by Plaintiff. If the DEPARTMENT/CPT thought that there might have been some sort of danger, the constitution mandates that they contact an article three judge to sign a warrant to pick up the child.  The only time that the government don't have to wait on a judge for a  warrant is in an exigent circumstances. Courts have determined what an exigent situations are, and none was constituted in the Plaintiff's case in 2015.

Plaintiff moves this court to award her $3,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.

## COUNT 4 DEFAMATION AGAINST THE FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES/CPT.

13. The Plaintiff is also suing the DEPARTMENT/CPT for DEFAMATION PER SE.  To survive a Defamation per se action, the Plaintiff have to proof that the Defendant should have known that the Defendant's statement was not true. In the 2015 TPR case, the Defendant knowingly provided false information in its petition for Termination of Parental Rights. The Plaintiff contacted the DEPARTMENT/CPT concerning the false information and the DEPARTMENT/CPT still moved forward with the false information, even signing under penalty of perjury.

Plaintiff moves this court to award her $3,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.

**COURT 5 LIBEL AGAINST THE FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES/CPT.**

Plaintiff brings a libel action also against the DEPARTMENT/CPT.  concerns the written publication of false statements. See Count 4 above.

Plaintiff moves this court to award her $3,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.

**COUNT 6 AGAINST THE FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES/CPT.**

14. Plaintiff brings a count of slander against the DEPARTMENT/CPT.  Slander is a spoken or oral defamation of another which is published to others and which tends to damage that person's reputation. The DEPARTMENT/CPT had published false damaging information against the Plaintiff during her 2015 TPR case and all the way up until the Plaintiff's acquittal.
 Plaintiff moves this court to award her $3,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.

**COUNT 7 FRAUD AGAINST THE FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES/CHILD PROTECTIVE TEAM.**

15. Plaintiff brings a common law fraud action against the DEPARTMENT/CPT.

**Fraud:**  Deceiving someone on purpose in a way that financially hurts others.

**Misrepresentation**:  A false or misleading statement about something, usually made with the intent to deceive.  A statement that is not supported by the facts.

Black's Law Dictionary defines fraud as:

*"Fraud consists of some deceitful practice or willful device, resorted to with intent to deprive another of his right, or in some manner to do him an injury".* This is what was done by

7

Defendant the DEPARTMENT/CPS. Severe injury was done to Plaintiff by the DEPARTMENT/CPS'S willful fraudulent activities.

Plaintiff moves this court to award her $3,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.

## COUNT 1
**U.S. CONSTITUTION FOURTH AMENDMENT AND FOURTEENTH AMENDMENT VIOLATIONS BY DAVID OKON OF FLORIDA DEPARTMENT OF CHILDREN AND FAMILES/CPT.**

16. On May 31, 2015 FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES/CPT Investigator DAVID OKON during his investigation of an alleged Child Abuse case, concerning Plaintiff's then 10 Month old daughter S. J. there was an agreement made with the

Plaintiff April P. Fox, DAVID OKON (DCF) and Devon A. Brown, agreeing that Devon A. Brown would watch the Plaintiff 's April P. Fox's then 5 year old daughter J. K. pending the outcome of the investigation. This agreement was authorized verbally by DAVID OKON'S Supervisor JULIO GARCIA.

17. On June 1st 2015, Plaintiff April P. Fox was arrested for alleged child abuse, and Plaintiff's daughter was removed from her home without a "warrant" signed by a judge. The Fourth Amendment to the United States Constitution clearly states; 'The right of the people to be secured in their persons , houses, papers and effects against unreasonable searches and seizures, cannot be violated, and no warrants shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized'.

18. The Plaintiff has suffered sleepless nights, stress and anxiety due to the action by DCF, and DCF'S Investigator DAVID OKON, who took Plaintiff's daughter without a 'warrant',

8

signed by a Judge, violating Plaintiff's daughter and Plaintiff's Constitutional protected Rights. Defendant has conspired against Plaintiff, because Defendant DAVID OKON and DCF has made a signed agreement with Plaintiff April P. Fox, and Devon A. Brown, stating that Devon A. Brown could keep an eye on Plaintiff's 5 year old daughter, pending outcome of the investigation. Defendant then came back and removed the Plaintiff's then 5 year old daughter J.K., violating the agreement. See the drafted agreement on Exhibit A, drafted by DAVID OKUN.

4) Plaintiff later filed her complaint, which sets forth the following claims: (1) violation of rights against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Art. I, § 12 of the Florida Constitution; (2) deprivation of liberty without due process in violation of the Fourteenth Amendment to the United States Constitution; (3) violation of constitutional rights to familial integrity; (4) negligence. As relief, Plaintiffs seek compensatory and punitive damages; a declaration that Defendant DAVID OKUM'S action was unconstitutional; a declaration that the statutes and protocols were unconstitutional as applied by Defendant DAVID OKUM. Plaintiff is seeking monetary damages from Defendant DAVID OKUM in the amount of $1,000,000 for violating plaintiff and her daughter's Fourth amendment Constitutional and Civil Rights violations for months of stress, anxiety, pain and sufferings.

19. In a Deposition of DCF'S child investigator David Okon, he admitted in his deposition that he did not feel that the mother had hurt the child, then 10 month old S.J. When asked, why then did he removed the child. He made in two separate statements, one, that it was his job to do so, and in the second statement he said that it was his boss that had directed him to do it.

20. Both Plaintiff and her then 5 year old daughter J.K'S fourth and fourteenth amendments were violated by DAVID OKON of the DEPARTMENT. The fourteenth amendment states clearly

9

that "no one should be deprived of life, liberty and property without due process of law".

Plaintiff's daughter then 5 year old J.K was taken without due process of law.

## COUNT 1
**FOURTEENTH AMENDMENT DUE PROCESS VIOLATION, CIVIL CONSPIRACY, DEPRIVATION OF RIGHT AND PERJURY AGAINST ELIZABETH ANTHONY OF FLORIDA DEPARTMENT OF CHILDREN AND FAMILES/CPS.**

21. Plaintiff brings this action against ELIZABETH ANTHONY employee of the DEPARTMENT/CPT for violating Plaintiff and her then 5 year old daughter J.K.'S constitutional and civil rights. The Defendant ELIZABETH ANTHONY had crafted a Termination of Parental Rights (PTR) petition against the Plaintiff that was filled with lies. They are not errors, because the Plaintiff addressed these lies with the DEPARMENT/CPS, which was ignored and was allowed to be used at her TPR trial that the court relied upon to help terminate Plaintiff's parental  rights which obviously caused tremendous suffering for plaintiff and her daughter over a four years period. Plaintiff moves this court to award her $1,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.

### COUNT 1 MEDICAL MALPRACTICE/NEGLECT AGAINST JACKSON MEMORIAL HOSPITAL

22.  THE HOSPITAL DID NOT FOLLOW PROPER PROCEDURES TO CHECK FOR BONE DISEASE BEFORE CALLING OUT CHILD ABUSE.

The Defendant JACKSON MEMORIAL HOSPITAL should have followed the following procedure before calling out child abuse:

Current Standards of Medical Practice Concerning Multiple Fractures, and the Requirement for Differential Diagnosis As reported by Jenny C, Committee on Child Abuse and Neglect, in "Evaluating infants and young children with multiple fractures," Pediatrics,(2)(2006), a differential diagnosis of child abuse should include the following list, with appropriate evaluation for each, according to currently recognized medical standards. Anything less should be considered as substandard medical practice.

' Osteogenesis imperfecta' Preterm birth (osteopenia of prematurity)' Rickets' Osteomyelitis' Copper deficiency' Disuse demineralization from paralysis' Other rare conditions (e.g. Menkes Syndrome)".

This was an article from the Medical community.
Multiple Fractures from Metabolic Bone Disease, Being Falsely Attributed to Inflicted Child Abuse: (A Guide for Medical-Legal Defense Briefs) HaroldEButtram,MD, (Retired Jan. 1, 2008) Formerly practiced in the fields of family and environmental medicine, board-certified in the latter.

23. Before the Defendant JACKSON MEMORIAL HOSPITAL could call child abuse, the Defendant should have ruled out the following defects first because they can often times and do often times appear to look like  child abuse. These are what should be ruled out first:

 ' Osteogenesis imperfecta' Preterm birth (osteopenia of prematurity) ' Rickets' Osteomyelitis' Copper deficiency' Disuse demineralization from paralysis' Other rare conditions (e.g. Menkes Syndrome).
None of this was ruled out in Plaintiff's case which leads to her nightmare  here on earth, because of these medical malpractice by the Defendant. The Defendant was not concerned about  the Plaintiff's due process rights, and immediately called child abuse.
Plaintiff moves this court to award her $4,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.

**COUNT 2 CIVIL  CONSPIRACY OF RIGHTS AGAINST JACKSON MEMORIAL HOSPITAL**

24. The Defendant JACKSON MEMORIAL HOSPITAL had conspired against the Plaintiff in that the Hospital never went through the proper procedures before calling out child abuse. This was in violation of her due process rights of the fourteenth amendment of the United States Constitution.

11

Plaintiff moves this court to award her $3,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.

### COUNT 3  DEPRIVATION OF JUSTICE UNDER COLOR OF LAW AGAINST JACKSON MEMORIAL HOSPITAL

25. The Defendant JACKSON MEMORIAL HOSPITAL had deprived Plaintiff of her rights also under 18 U.S.C. 242, by not following proper procedures that would have prevented the whole allegations of child abuse if JACKSON MEMORIAL HOSPITAL had followed the proper procedures. The Plaintiff from day one has constantly maintained her innocence of the allegation of child abuse, yet this Defendant claimed that she did without any evidence whatsoever.

Plaintiff moves this court to award her $3,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.

### COUNT 4 DEFAMATION AGAINST JACKSON MEMORIAL HOSPITAL.

26. The Plaintiff is also suing JACKSON MEMORIAL HOSPITAL  DEFAMATION PER SE.  To survive a Defamation per se action, the Plaintiff have to proof that the Defendant should have known that the Defendant's statement was not true. In 2015 and forward, the Defendant provided false information stating that the Plaintiff abused her child then 10 year old S.J. which obviously was not proven to be true in a court of law and which caused the Plaintiff tremendous injury over the last 4 years .

12

Plaintiff moves this court to award her $3,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.

## COURT 5 LIBEL AGAINST THE JACKSON MEMORIAL HOSPITAL .

27. Plaintiff brings a libel action also against JACKSON MEMORIAL HOSPITAL. Libel  concerns the written publication of false statements. See Count 4 above.

Plaintiff moves this court to award her $3,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.

## COUNT 6 AGAINST JACKSON MEMORIAL HOSPITAL.

28. Plaintiff brings a count of slander against JACKSON MEMORIAL HOSPITAL.  Slander is a spoken or oral defamation of another which is published to others and which tends to damage that person's reputation. JACKSON MEMORIAL HOSPITAL had made false damaging information against the Plaintiff from her hospital visit in 2015 until her acquittal in 2019 claiming that she abused her offspring.

Plaintiff moves this court to award her $3,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.

## COUNT 7 FRAUD AGAINST JACKSON MEMORIAL HOSPITAL

29. Plaintiff is also bringing a fraud claim against the Defendant JACKSON MEMORIAL HOSPITAL for fraud. Black's Law Dictionary describes fraud as;

*"Constructive fraud is considered fraud under the law although deceptive intent is missing because it has the same consequences as an actual fraud would have. It is a finding imposed in the interest of fairness and justice, such as to prevent violation of a public or private trust or confidence, the breach of a fiduciary duty, or the use of undue influence"*. The Defendant JACKSON MEMORIAL HOSPITAL even if it claims that its intent was not to be deceptive, it cased the same effect as an actual fraud would. The bottom line is, the Defendant JAKSON MEMORIAL HOSPITAL action is what started the whole tribulation that Plaintiff went through and still has not recovered from.

## MEDICAL MALPRACTICE/NEGLIGENCE AGAINST DR. MARIA BASTOS

30. Plaintiff April P. Fox brings this Medical Malpractice/Negligence claim against the Defendant Dr. Maria Bastos who works for JACKSON MEMORIAL HOSPITAL. Dr. Bastos has been negligent in her assessment of how she had proceeded with the Plaintiff's alleged child abuse case. Dr. Bastos should have followed certain procedures to make sure that the alleged child abuse that she was alleging was in fact child abuse. She was supposed to follow the following procedures and do a system of elimination to make sure that it was not a medical illness that the then 10 year old baby S.J was succumbed to. She should have checked for the following according to the medical community:

31. Current Standards of Medical Practice Concerning Multiple Fractures, and the Requirement for Differential Diagnosis As reported by Jenny C, Committee on Child Abuse and Neglect, in "Evaluating infants and young children with multiple fractures," Pediatrics,(2)(2006), a differential diagnosis of child abuse should include the following list, with appropriate evaluation for each, according to currently recognized medical standards. Anything less should be considered as substandard medical practice.

' Osteogenesis imperfecta' Preterm birth (osteopenia of prematurity)' Rickets' Osteomyelitis' Copper deficiency' Disuse demineralization from paralysis' Other rare conditions (e.g. Menkes Syndrome)".

32. This was an article from the Medical community.

14

Multiple Fractures from Metabolic Bone Disease, Being Falsely Attributed to Inflicted Child Abuse: (A Guide for Medical-Legal Defense Briefs) Harold E Buttram, MD, (Retired Jan. 1, 2008) Formerly practiced in the fields of family and environmental medicine, board-certified in the latter.

33. Dr. Maria Bastos medical malpractice/negligence was the basis for the Plaintiff having to go through four years of hell and torment because Dr. Maria Bastos did not follow the proper procedures to properly diagnosed what was happening to Plaintiff's then 10 month old baby girl S.J. before calling out child abuse.

Plaintiff moves this court to award her $1,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.


## MEDICAL MALPRACTICE/NEGLIGENCE AGAINST DR. JOAN ALVARANGA

34. Plaintiff April P. Fox brings this Medical Malpractice/Negligence claim against the Defendant Dr. Joan Alvaranga who works for JACKSON MEMORIAL HOSPITAL. Dr. Alvaranga has been negligent in her assessment of how she had proceeded with the Plaintiff's alleged child abuse case. Dr. Alvaranga should have followed certain procedures to make sure that the alleged child abuse that she was alleging was in fact child abuse. She was supposed to follow the following procedures and do a system of elimination to make sure that it was not a medical illness that the then 10 year old baby S.J was succumbed to. She should have checked for the following according to the medical community:

35. Current Standards of Medical Practice Concerning Multiple Fractures, and the Requirement for Differential Diagnosis As reported by Jenny C, Committee on Child Abuse and Neglect, in "Evaluating infants and young children with multiple fractures," Pediatrics,(2)(2006), a differential diagnosis of child abuse should include the following list, with appropriate evaluation for each, according to currently recognized medical standards. Anything less should be considered as substandard medical practice.

**' Osteogenesis imperfecta' Preterm birth (osteopenia of prematurity)' Rickets' Osteomyelitis' Copper deficiency' Disuse demineralization from paralysis' Other rare conditions (e.g. Menkes Syndrome)".**

36. This was an article from the Medical community.
Multiple Fractures from Metabolic Bone Disease, Being Falsely Attributed to Inflicted Child Abuse: (A Guide for Medical-Legal Defense Briefs) Harold E Buttram, MD, (Retired Jan. 1, 2008) Formerly practiced in the fields of family and environmental medicine, board-certified in the latter.

37. Dr. Joan Alvaranga's medical malpractice/negligence was the basis for the Plaintiff having to go through four years of hell and torment because this Dr. Joan Alvaranga did not follow the proper procedures to properly diagnosed what was happening to Plaintiff's then 10 month old baby girl S.J. before calling out child abuse. Defendant admitted in Plaintiff's criminal trial on the stand that she was not an indocrinologist or a geneticist. In other words she was not even medically qualified to diagnosed bone disease. She must also be held liable for calling out something so serious as child abuse against the Plaintiff which actually helped to ruin her life and destroyed her family.

Plaintiff moves this court to award her $1,000,000 for all the terror that she befell over the past 4 years by this Defendant under this count, which includes mental stress, emotional stress, physical stress, financial stress, loss of job, loss of income, ruined credit, ruined reputation, sleepless nights, family feud etc.

38. Plaintiff had suffered tremendously over the last four years for an allegation that was never proven with any evidence or eyewitnesses. The Plaintiff was acquitted of the allegation of child abuse on May 16, 2019 because the state could not provide proof of the charge.

According to Justice, the Plaintiff should be restored to her state before the allegation that ruined her and her children life.

**CONCLUSION**

WHEREFORE the Plaintiff moves this honorable court of record, court of justice to restore her back to her original sate before the allegation and GRANT her the Declaratory relief in returning her children to her, and to allow the monetary and putative damages award of $44,000,000 for four years of mental stress, emotional stress, financial stress, slandering her name in the public, ruined her reputation, blocked her from getting employment, blocking her from renting an apartment. The Defendants action also caused the Plaintiff to be homeless for over a year. The Defendants action also caused family turmoil within the Plaintiff's family.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the ongoing was furnished via U.S. Mail this 28 day of May , 2019 to the party below:

Parties Served:                                          By:

                                                         *April P. Fox*
                                                         April P. Fox
FLORIDA DEPARTMENT OF CHILDREN                           P.O. Box 470373
AND FAMILIES/CPT                                         MIAMI, FL 33247
317 Winewood Blvd.                                       (954) 638-5433
Building 1, Room 202
Tallahassee, Florida 32399-0700
Phone: (850) 487-1111
Fax: (850) 922-2993

David Okon
401 N.W. 2nd Avenue Miami,
5th Floor South Tower
Miami, Fl. 33128
(786) 257-5022

ELIZABETH ANTHONY
1393 SW 1st STREET
MIAMI FL. 33135
(305)374=6112

JACKSON MEMORIAL HOSPITAL
1611 NW 12th Ave,
Miami, FL 33136
(305) 585-1111

DR. MARIA BASTOS
1611 NW 12th Avenue
Miami, FL. 33136


DR. JOAN ALVARANGA
1150 NW 14th Street, #609
MIAMI, FL. 33136